# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| E-SYSTEM DESIGN, INC. | § | |
| --- | --- | --- |
| | § | |
| v. | § | Civil Action No. 4:17-CV-00682 |
| | § | Judge Mazzant |
| MENTOR GRAPHICS CORPORATION | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Mentor Graphics Corporation's ("Mentor") Motion to Transfer Venue (Dkt. #26). After reviewing the relevant pleadings and motion, the Court finds that the motion should be denied.

## BACKGROUND

This is a suit about a patent licensee suing for patent infringement. On January 14, 2008, the patent licensor—Georgia Tech Research Company ("Georgia Tech")—executed a licensing agreement with the patent licensee—Plaintiff E-System Design, Inc. ("E-System") (Dkt. #9 at p. 6). The Original License Agreement granted "an exclusive license" to E-System for technology in U.S. Patent Application No. 11/888,705 that later included United States Patent No. 8,352,232 (the "'232 Patent") (Dkt. #1 at p. 4; Dkt. #9, Exhibit 1 at pp. 2–3; Dkt. #9, Exhibit 2 at p. 2; Dkt. #9, Exhibit 6 at p. 2).

On September 27, 2017, E-System sued Mentor for infringement of the '232 Patent (Dkt. #1). On February 16, 2018, Mentor filed its Motion to Transfer Venue (Dkt. #26). On March 9, 2018, E-System responded (Dkt. #31). On March 23, 2018, Mentor filed its reply (Dkt. #35). On March 30, 2018, E-System filed its sur-reply (Dkt. #36).

**LEGAL STANDARD**

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are not exhaustive or exclusive, and no single factor

is dispositive. *Id.* The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*

**ANALYSIS**

The parties do not dispute that this case could have been filed in either the District of Oregon or in the Eastern District of Texas. Mentor argues, however, that the District of Oregon is a more convenient venue for this litigation than the Eastern District of Texas. Thus, the Court must review the private and public interest factors as they apply to the current and proposed venue. *Volkswagen II*, 545 F.3d at 315.

**I.    The Private Interest Factors**

**A.  The Relative Ease of Access to Sources of Proof**

Mentor argues that the documents and source code concerning the "research, design, and development of the ['232 Patent]" are located in Mentor's office in Oregon and "*no* relevant sources of proof appear to be based in this District." (Dkt. #26 at p. 12) (emphasis in original). Mentor also claims that the employees at its regional sales office in Plano, Texas (the "Plano Office") cannot access "a number of technical documents involving the [Accused Products], including the source code. . . ." (Dkt. #35, Exhibit 1 at p. 3). E-System counters that "all of its electronic discovery can be easily accessed" at the Plano Office (Dkt. #31 at p. 11). E-System contends that the Plano Office possesses marketing and sales information relevant to the Accused Products. E-System claims that documents will come from several other locations to refute Mentor's assertion that there is one, critical document repository in Oregon. Lastly, E-System asserts that the parties have stipulated to "implement electronic discovery processes." (Dkt. #31 at 12).

"[T]he location of documents is given little weight in determining proper venue unless the documents 'are so voluminous [that] their transport is a major undertaking.'" *Barnes & Noble Booksellers, Inc. v. DDR DB SA Ventures, LP*, No. SA05CA0002XR, 2005 WL 1279192, at *2 (W.D. Tex. May 5, 2005) (quoting *Gardipee v. Petrol. Helicopters, Inc.*, 49 F. Supp. 2d 925, 931 (E.D. Tex. 1999)). The documentary evidence in this case is readily portable. Thus, this factor is neutral in the venue analysis.

### B. The Availability of Compulsory Process

Mentor claims that the parties do not identify any third-party witnesses, who reside in this District, so this factor is neutral. Via affidavit, Mentor asserts that Bill Martin ("Martin")—Mentor's former employee and E-System's former Vice President—has no knowledge of the development of the Accused Products (Dkt. #35, Exhibit 1 at p. 3). E-System counters that this factor only favors transfer when more third-party witnesses reside within the subpoena range of the transferee venue than in the current venue. E-System further asserts that Martin currently resides in this District and may have information, concerning the Accused Products or Mentor's infringement of the '232 Patent. E-System submits that Martin is subject to the Court's subpoena power, opposing transfer.

A court's subpoena may command a person to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c). A court's compulsory process is "particularly [important] where third-party witnesses are 'specifically identified.'" *U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co., Ltd.*, C.A. No. 6:12-cv-398-MHS-JDL, 2013 WL 1363613, at *3–4

(E.D. Tex. April 2, 2013). In *Ethernet*, for example, the court deemed that this factor favored transfer because more of the named, third-party witnesses resided there than in the transferor district. *Id.* at *4.

The majority of third-party witnesses in this dispute reside in the Northern District of Georgia. *See infra* "The Most Relevant and Material Witnesses." One third-party witness resides outside of the United States. *See infra* "The Most Relevant and Material Witnesses." E-System identifies one third-party witness in this District—Martin—as a plausible source of relevant and material evidence. Mentor submitted an affidavit, claiming that Martin has no knowledge of the Accused Products' development. Moreover, Mentor did not identify any third-party witnesses, residing in the District of Oregon. As such, more third-party witnesses allegedly reside in this District than in the District of Oregon, though the extent of Martin's materiality is in dispute. Thus, this factor does not support transfer.

### C. Cost of Attendance for Willing Witnesses

Mentor argues that the witnesses who know about the "research, development, and financial data of the ['232 Patent]" are in Oregon and all other employees it might call as witnesses reside in Oregon. Mentor asserts that no employees in the Plano Office have information relevant to the case and none of E-System's purportedly relevant witnesses reside in the Eastern District of Texas. Accordingly, Mentor claims that E-System's likely witnesses will be burdened whether proceedings are in this District or in Oregon. E-System counters that Mentor's CEO Walden "Wally" Rhines ("Rhines") owns a home in Highland Park, whose size, cost, and daily activity suggest it is his primary residence. E-System further contends that Rhines is a member of several Texas-based entities. E-System claims that its Complaint specifically names Rhines and he is a crucial witness. E-System asserts that transfer will severely burden the people, residing in Georgia,

5

whom it will likely call as witnesses. E-System further declares that the cost of sending these witnesses cross-country will unevenly impact E-System—a significantly smaller company than Mentor. Finally, E-System contends that transfer is inconvenient for third-party witnesses.

In *Volkswagen II*, the Fifth Circuit noted that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment." 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "The convenience of witnesses is probably the single most important factor in transfer analysis." *In re Genentech, Inc.*, 556 F.3d 1338, 1342 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y 2006). "[T]he convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Mid-Continent Cas. Co. v. Petrol. Sols., Inc.*, 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009). Finally, "among party and non-party key-witnesses, a court should give greater weight to the availability and convenience of non-party, key witnesses." *Id.*

When considering witnesses in this factor of the transfer of venue analysis, "[a] district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 556 F.3d at 1343. Thus, the Court asks (1) what witnesses are most relevant and material to hearing this dispute and (2) where those witnesses reside.

i. **The Most Relevant and Material Witnesses**

The Complaint alleges that Madhavan Swaminathan ("Swaminathan"), E-System's Chief Technology Officer ("CTO") is a named inventor of the '232 Patent. The Complaint claims that E-System's Chief Executive Officer ("CEO") Gene Jakubowski ("Jakubowski") emailed Rhines about integrating technology, which led to the '232 Patent, with Mentor's technology but Rhines did not reply.[1] In its Response, E-System also claimed that Rhines attended a conference in Monterey, California where a Mentor employee showcased technology and explained that the technology was based on research performed by Georgia Tech (Dkt. #31 at p. 14). Mentor denies this allegation in its entirety (Dkt. #35 at p. 6). The Complaint asserts that afterward, Swaminathan went to a conference in China where a Mentor employee presented technology similar to the '232 Patent.

Thereafter, the Complaint avers that Jakubowski visited a conference where Mentor's employee Dusan Petranovic ("Petranovic") said in a presentation that Mentor's interconnect technology arose from Georgia Tech's research (Dkt. #1 at p. 6). The Complaint claims that Jakubowski told Petranovic that Georgia Tech had exclusively licensed the '232 Patent—on which the interconnect technology was based—to E-System. The Complaint further purports that Jakubowski asked Petranovic if Mentor might be interested in partnering with E-System to market the '232 Patent. The Complaint next asserts that Jakubowski traveled to another conference where E-System was showcasing its exclusive license of the '232 Patent. The Complaint contends that

---

[1] In an affidavit, Mentor denied that Rhines had any "specific information on the design, development, functionality, sales or marketing of the [Accused Products]. . . ." (Dkt. #35, Exhibit 1 at p. 3). Mentor never denied, however, that Rhines received an email from Swaminathan, concerning the joint development of technology leading to the '232 Patent. The Court views this alleged communication between Swaminathan and Rhines as the basis for Rhines's relevance and materiality to this case. The fact that Swaminathan emailed Rhines "*before* the ['232 Patent] issued," as Mentor stresses, does not change its relevance or Rhines's relevance in the Court's opinion (Dkt. #35 at p. 6) (emphasis in original).

Mentor's employees, including John Park ("Park"), visited E-System's booth, recorded the '232 Patent number, and departed.

In its Response, E-System identifies several, third-party witnesses and claims that they are highly relevant and material to this case. These witnesses include: (1) Martin, (2) Kenneth M. Float ("Float") and (3) Bryan Bockop ("Bockop"), the attorneys who prosecuted the '232 Patent, (4) Ki Jin Han ("Han"), the co-inventor of the '232 Patent, and (5) Dr. Roberto Suaya ("Suaya"), the former Mentor employee initially responsible for the development of the Accused Products (Dkt. #26, Exhibit 9 at p. 4, Exhibit 10 at pp. 2, 5; Dkt. #31 at pp. 14–15). E-System avers that Float, Bockop, and Han reside in or outside of Atlanta, Georgia (Dkt. #31 at pp. 14–15).

Meanwhile, Mentor declares that its employee, Dr. Vasileios Kourkoulos ("Kourkoulos"), primarily designed and developed the Accused Products. Mentor identifies five other employees, who also reside in Oregon, as possibly having information relevant to the research, design, business decisions, and financial data of the Accused Products: Steve Baker ("Baker"), Rick Pier ("Pier"), Joseph Sawicki ("Sawicki"), Carey Robertson ("Robertson"), and Rick Trebing ("Trebing") (Dkt. #26 at pp. 8–9).

This case arises from the alleged infringement of the '232 Patent and from the creation of the Accused Products. Accordingly, the Court assigns considerable weight to witnesses involved in the development of the '232 Patent, witnesses who discussed a potential partnership for the development or marketing of the '232 Patent or the technology leading to the '232 Patent between E-System and Mentor, and witnesses engaged in the development of the Accused Products. Thus, the Court finds that Swaminathan, Han, Float, Bockop, Rhines, Jakubowski, Petranovic, Park, Kourkoulos, Baker, Pier, Sawicki, Robertson, Trebing, and Martin are the most relevant and material witnesses to this case (the "Critical Witnesses").

### ii. Where the Critical Witnesses Reside

Per his affidavit, Swaminathan declares that he resides in Atlanta, Georgia (Dkt. #36, Exhibit 1 at p. 1). Mentor admits that Rhines has a "family home" in Dallas, Texas, but contends that Rhines works at Mentor's headquarters in Oregon and keeps no office in Texas (Dkt. #35 at pp. 6–7). The Court recognizes that in the modern economy, a CEO might work in different places from where he resides. Moreover, Mentor's own designation of Rhines's Texas home as a "family home" and Mentor's unwillingness to explain where Rhines resides if not in Texas, satisfies the Court that Rhines resides in Texas and near this District. None of the briefing asserts where Jakubowski resides. The litigants also do not mention where Petranovic or Park reside. Mentor clearly claims that Kourkoulos, Baker, Pier, Sawicki, Robertson, and Trebing are "located[2]" in Oregon (Dkt. #26 at pp. 8–9). Finally, E-System contends that Martin resides in this District while Float, Bockop, and Han reside in Atlanta, Georgia. Thus, the Critical Witnesses appear to reside in Georgia, Oregon, and Texas.

### iii. The District of Oregon Is Not "Clearly More Convenient" for the Critical Witnesses and for the Willing Witnesses

The Critical Witnesses are scattered across the United States. Martin, a Critical Witness and third-party witness, resides in this District and Rhines resides near this District. Meanwhile, several Critical Witnesses allegedly reside in Georgia and Oregon. Put simply, there is no epicenter for this dispute and, therefore, no forum is best suited for its efficient resolution. Accordingly, the District of Oregon is not "clearly more convenient" for the Critical Witnesses. *Volkswagen II*, 545 F.3d at 315.

---

[2] The Court read the word "located" in Mentor's briefing as equivalent to the term "reside" for purposes of this Order's analysis. This interpretation did not change the Order's outcome.

### D. All Other Practical Problems

Mentor argues that since this case is at an early stage, "no practical problems or inefficiencies exist that should deter this court from transferring [venue]." (Dkt. #26 at p. 15). E-System argues that Mentor has identified no practical problems with the current forum, making this factor neutral.

"[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a 1404(a) motion to transfer. Were it, delay would militate against transfer in every case." *In re Radmax*, 720 F.3d 285, 289 (5th Cir. 2013). Further, "the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under 1404(a)." *Volkswagen I*, 371 F.3d at 206. There is no substantial evidence that transferring venue would unduly burden either party. Thus, this factor is neutral in the transfer of venue analysis.

### II. Public Interest Factors

### A. The Administrative Difficulties Flowing from Court Congestion

Mentor argues that the Eastern District of Texas ranks fourth in the country for weighted filings per judge and 6.4 percent of civil cases pending in this District are over three years old. Mentor asserts that the District of Oregon ranks forty-eighth nationally for weighted filings and only 4.9 percent of its civil cases are over three years old. Mentor further claims that transfer to the District of Oregon will not substantially augment the expected time to trial. E-System counters that this District has local patent rules crafted to handle patent cases quickly and efficiently. E-System asserts that discovery will begin soon and transfer to a forum without local patent rules would stall the dispute's resolution. E-System contends that the 1.5 percent difference between cases over three years old in this District and the District of Oregon is "inconsequential and . . . not specific to patent cases." (Dkt. #31 at p. 16).

The most recent statistics obtained by the Court for the twelve-month period ending on September 30, 2017, indicate that the median time from filing to trial in civil cases in the Eastern District of Texas was 23.8 months, as compared to 24.9 months in the District of Oregon.[3] The median time from filing to disposition in the Eastern District of Texas was 6.9 months and 10.8 months in the District of Oregon. Thus, this factor is neutral as the case resolution speeds of both the District of Oregon and the Eastern District of Texas are similar.

**B. The Local Interests in Having Localized Interests Decided at Home**

Mentor asserts that it has always been located in Oregon and has about 979 employees there. Mentor contends that the Plano Office has nineteen employees, none of who are involved in the design or development of the Accused Products. Mentor submits that all of Mentor's employees involved with the design, development, advertising, and marketing decisions of the Accused Products are located in Oregon. Mentor further asserts that the District of Oregon has a "Model Order Regarding E-Discovery in Patent Cases." (Dkt. #35 at p. 7). E-System counters that this District has a strong interest in deciding this case, citing Mentor's Plano Office, personnel in this District, and alleged sale of Accused Products. E-System contends that Mentor advertises itself as a "Siemens Business" and Siemens recently announced an expansion in Grand Prairie to accommodate 100 employees (Dkt. #31 at p. 17). Finally, E-System argues that "much of the technology sector in Northeast Texas is located [in this District]," giving its residents a "unique interest in upholding patent laws." (Dkt. #3 at p. 17).

This District, like any other, has an interest in a case involving alleged patent infringement by a company with an office, personnel, and business within it. Nevertheless, the public interest

---

[3] *See* Federal Court Management Statistics, September 2017, www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/09/30-1, accessed May 24, 2018.

is greater in the District of Oregon where Mentor is headquartered and where nearly 1,000 of its employees reside. Therefore, the Court finds that this factor slightly favors transfer.

### C. Familiarity of the Forum with the Governing Law

E-System argues that the Court is "uniquely suited" to preside over this case given its "vast experience adjudicating patent infringement cases." (Dkt. #31 at pp. 17–18). E-System also contends that this District's local patent rules and processes ensure this case's efficient resolution. Mentor offers no arguments for this factor. This case involves the application of patent law. Both this District and the District of Oregon are capable of applying patent law. Thus, this factor is neutral.

### D. The Avoidance of Unnecessary Problems of Conflicts of Law

E-System argues that it is not aware of any conflict of law issues in this case. Mentor does not contest this factor. Both the Eastern District of Texas and the District of Oregon are equally capable of applying federal patent law. Thus, this factor is neutral.

## CONCLUSION

Transfer would not be "clearly more convenient" for the Critical Witnesses, as they reside across the nation. *Volkswagen II*, 545 F.3d at 315. Mentor has not demonstrated that the District of Oregon would handle this case more efficiently than this District. Rather, Mentor's proposed transfer would shift the inconvenience of proceedings entirely to E-System—a burden compounded by E-System's being a smaller company.

After considering the above factors, the Court is of the opinion that Defendant has not shown "good cause" that transfer to the District of Oregon is "clearly more convenient" than the current venue. *Id.*

It is therefore **ORDERED** that Defendant Mentor Graphics Corporation's Motion to Transfer Venue (Dkt. #26) is hereby **DENIED**.

**SIGNED this 1st day of June, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE